UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————————————

KENNEDY D. COLEMAN JR.,

                                         DECISION AND ORDER

                        Plaintiff,

                                         19-CV-1508L

            v.


ANDREW SAUL,
Commissioner of Social Security,

                        Defendant.

—————————————————————————————


        Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security

("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the

Commissioner's final determination.

        On May 25, 2016, plaintiff, then twenty-six years old, filed an application for Supplemental

Security Income, alleging disability beginning January 20, 2016. (Administrative Transcript, Dkt.

#6 at 10). His application was initially denied. Plaintiff requested a hearing, which was held

September 20, 2018 via videoconference before Administrative Law Judge ("ALJ") Maria

Herrero-Jaarsma. The ALJ issued an unfavorable decision on November 21, 2018. (Dkt. #6 at

10-22). That decision became the final decision of the Commissioner when the Appeals Council

denied review on September 9, 2019. (Dkt. #6 at 1-3). Plaintiff now appeals.

        The plaintiff has moved for remand of the matter for further proceedings (Dkt. #9), and the

Commissioner has cross moved (Dkt. #11) for judgment on the pleadings, pursuant to Fed. R. Civ.

Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, including treatment records pertaining to left fibula fracture (status post multiple surgeries), obesity, schizoaffective disorder, and bipolar disorder, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #6 at 12).

In applying the special technique to plaintiff's mental health impairments, the ALJ found that plaintiff has a mild limitation in understanding, remembering or applying information, a moderate limitation in interacting with others, a mild limitation in concentration, persistence and pace, and a mild limitation in adapting and/or managing himself. (Dkt. #6 at 14-15).

Upon review of the record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, with several additional limitations. Plaintiff must be able to alternate between sitting and standing once every hour for 5 minutes while staying on-task. He can no more than occasionally push, pull and climb ramps and stairs, and can never climb ladders, ropes or scaffolds. He can occasionally balance on level surfaces, stoop, and kneel, but can never crouch or crawl. He must avoid exposure to extreme cold or wetness. He is able to understand,

carry out, and remember simple, routine and repetitive tasks, defined as work that requires doing the same tasks every day with little variation in location, hours or responsibilities. He is also limited to jobs in a low stress environment, meaning those with no supervisory responsibilities, no independent decision-making required except with respect to simple, routine and repetitive decisions, and few if any changes in workplace routines, processes or settings. Plaintiff can have no more than occasional contact and interaction with supervisors and co-workers, and only incidental contact with the public. He should engage in work that can be performed independently from other employees, although coworkers can be present in the same general work area. (Dkt. #6 at 16).

When provided this RFC as a hypothetical question at the hearing, vocational expert Jay Steinbrenner testified that such an individual could perform the representative light positions of injection molder and stock checker. (Dkt. #6 at 21).

## I.   The ALJ's Exertional RFC Findings

Plaintiff argues that the ALJ erred when she afforded "great weight" to the medical opinion of consulting physiatrist (physical medicine and rehabilitation specialist) Dr. Nikita Dave (Dkt. #6 at 313-16), but failed to incorporate all of the limitations specified in the opinion into her RFC finding.

Dr. Dave examined plaintiff on September 30, 2016 and noted his prior fibular fracture (described as a high school football injury) and 2010 surgery. On examination, she found full strength and range of motion in all extremities. She noted reduced squatting ability ("1/2 full, difficult due to left ankle"), surgical scars on the left lower leg with slight tenderness, and decreased sensation in the left thigh and leg on the front and sides. She opined that due to plaintiff's prior ankle fracture, he should "avoid ladders, heights, repetitive squatting, and crouching. He also

has moderate to marked limitations for repetitive gross motor manipulation through the left ankle and prolonged standing, walking, and lifting, carrying, pushing, and pulling of heavy objects due to [the] left ankle." (Dkt. #6 at 316).

The ALJ observed that plaintiff's treating provider had declined to complete a medical source statement. As such, Dr. Dave's assessment was the only medical opinion of record concerning plaintiff's exertional limitations. (Dkt. #6 at 20).

Plaintiff argues that the ALJ's RFC finding did not include all of the limitations specified by Dr. Dave. As such, plaintiff argues that the ALJ improperly substituted her own lay opinion for competent medical opinion, and baselessly extrapolated specific functional abilities from vague terms such as "moderate" and "marked."

The Court disagrees. There is no legal requirement that an ALJ rely solely on a medical opinion in every case to reach an RFC finding, or that an ALJ adopt the opinions upon which she does rely *in toto*. Rather, the ALJ has the responsibility of reviewing all the evidence, resolving inconsistencies, making a determination consistent with the evidence as a whole, and setting forth her reasoning in sufficient detail to permit meaningful review. *See Bliss v. Colvin*, 2015 U.S. Dist. LEXIS 12622 (N.D.N.Y. 2015) ("[i]t is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such").

As the ALJ noted, the record concerning plaintiff's left ankle in the years after his surgeries in or around 2009-2010 did not indicate any appreciable degree of limitation. Records of outpatient treatment and annual physicals between 2015 and 2018 consistently showed normal findings, with normal gait, no use of assistive devices or braces, normal ambulation, normal sensation, and full range of motion in plaintiff's ankle. (Dkt. #6 at 232, 234, 251, 338, 339, 343, 346, 358). Plaintiff did present on at least two occasions complaining of "on and off" left ankle pain, for which he was

4

prescribed pain relief medications, and/or encouraged to attempt physical therapy. On one of those visits, the range of motion in his left ankle was found to be diminished: his examinations were otherwise normal. (Dkt. #6 at 245-48, 252-54). In short, the objective evidence of record simply does not support significant limitations with respect to plaintiff's left ankle.[1]

To the extent plaintiff argues that the ALJ failed to account for Dr. Dave's opinion that plaintiff should not perform repetitive squatting, the Court observes that the ALJ's RFC finding that plaintiff can "never" crouch fully accommodates such a limitation. While SSA Rulings do not define the term "squat," it is generally considered synonymous with "crouch" for purposes of an RFC determination. *See Doornbos v. Commissioner*, 2017 U.S. App. LEXIS 25263 at *14 (6th Cir 2017) ("[g]iven that squatting and crouching are synonymous, the ALJ's inclusion of [crouching limitations] accommodates [a limitation on squatting]"); *Pierce v. Colvin*, 2013 U.S. Dist. LEXIS 93033 at *27 (E.D.N.C 2013) (although neither the Regulations nor Rulings define "squat," it is synonymous with "crouch," which is defined by the Rulings as "bending the body downward and forward by bending both the legs and spine").

With respect to the remainder of the ALJ's RFC determination, I find that it was appropriately-tailored to accommodate plaintiff's documented mental and physical diagnoses and their accompanying symptoms and limitations. Although Dr. Dave may have described some of plaintiff's limitations as "moderate" or "marked," her use of those terms was not "vague under the circumstances," given that her report summarized her specific, objective examination findings and recited plaintiff's medical history, all of which the ALJ described and considered. *Burdick v.*

---

[1] Although plaintiff's present appeal rests on the contention that plaintiff's ankle pain and/or decreased sensation or range of motion are disabling from an exertional standpoint, the Court observes that plaintiff's reports to his health care providers seldom mentioned problems with his ankle other than occasional flare-ups of pain and discomfort. In describing to his therapist why he was seeking disability benefits in 2017, plaintiff stated that he suffered from back pain, and wanted "to obtain SSI so he does not have to worry about finding a job and can focus on his rap career." (Dkt. #6 at 534).

*Commissioner*, 2020 U.S. Dist. LEXIS 51908 at *23-*24 (W.D.N.Y. 2020)(collecting cases, and noting that an ALJ may rely on a medical opinion containing arguably vague terms such as "mild," "moderate" and "marked," where the opinion does not stand alone, but is based on objective testing, examination findings, or other evidence). On balance, the weight given by the ALJ to Dr. Dave's opinion was appropriate and sufficiently explained, and the ALJ's decision is supported by substantial evidence, and was not the product of reversible legal error.

Finally, even assuming *arguendo* that the ALJ erred in failing to include additional limitations on exposure to unprotected heights or "prolonged" standing in her RFC finding, such error was harmless. The positions identified by the vocational expert, injection molder and stock checker, are not inconsistent with such limitations. *See e.g.*, *Kham v. Commissioner*, 2020 U.S. Dist. LEXIS 33825 (W.D.N.Y. 2020) (injection molder position consistent with need to change position at will); *Ambrose-Lounsbury v. Saul*, 2019 U.S. Dist. LEXIS 138905 (W.D.N.Y. 2019) (stock checker position consistent with restriction against unprotected heights); *Sizer v. Colvin*, 2013 U.S. Dist. LEXIS 170397 (W.D.N.Y. 2013) (stock checker position consistent with restriction on unprotected heights, and 30-minute sit/stand options); *Garcia v. Astrue*, 2012 U.S. Dist. LEXIS 87038 (W.D.N.Y. 2012) (stock checker consistent with need to change positions at will).

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

6

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #9) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #11) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____

DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        November 3, 2020.